STEWART, J.
| ,The defendant, Tommy Glen Stephens (“Stephens”), pled guilty to one count of possession of marijuana, third offense, and was sentenced to five years at hard labor, with credit for time served. He pled pursuant to State v. Crosby, 338 So.2d 584 (La.1976), so that he could appeal the denial of his motion to suppress evidence seized from his home. We affirm.
FACTS
Stephens alleged in the motion to suppress that Deputy Donovan Shultz of the Jackson Parish Sheriffs Office entered his home on December 30, 2009, without consent and that marijuana and other evidence seized from the home should be suppressed. The motion was heard by the trial court on September 17, 2010. The state offered the testimony of Deputy Shultz, and the defense offered the testimony of David Neatherland (“Neather-land”) and Stephens.
Deputy Shultz testified that he went to Stephens’ home in search of Adrianna Taylor, for whom arrest warrants had been issued. He believed that Taylor was living there. When Deputy Shultz knocked on the door, Neatherland opened it. He told Neatherland that he wanted to speak to Stephens. After first inviting him to enter, Neatherland told him to wait while he asked Stephens if he could enter. Deputy Shultz testified that he heard Neatherland make inquiry and then heard Stephens say, “Come in.”
When Deputy Shultz entered the house, Stephens was on the couch in front of the television with a plate of food beside him. He asked Stephens about Taylor and learned that she had been staying with him but was not there that night. As they were talking, Deputy Shultz noticed a marijuana 12roach in a clip on the couch next to Stephens. He advised Stephens of what *464 he saw and of his rights. Stephens admitted that he had been smoking marijuana. Deputy Shultz took the marijuana into his possession and then asked Stephens whether he had anything else in the house. After advising Stephens that he could get a warrant based on the marijuana being in plain view, he asked for his consent to search the rest of the house. Deputy Shultz testified that Stephens consented to a search and then turned over to him a grinder for marijuana. Deputy Shultz then found clear plastic bags containing marijuana and several marijuana roaches in a dresser.
On cross, Deputy Shultz admitted that he did not have the warrants for Taylor’s arrest with him and that he had no search warrant for Stephens’ home. Deputy Shultz also admitted that he did not know whether Neatherland said his name when he asked Stephens if he could enter the house and that he could not see Stephens from the doorway. When asked what Stephens was doing when he first saw him, Deputy Shultz stated that he was “laid on the couch” and “appeared to be high from smoking, to be perfectly honest.”
Neatherland, the defendant’s brother-in-law, testified that he answered the door because Stephens was asleep on the living room couch. Neatherland testified that Deputy Shultz asked if Taylor was there. When he told him that she was not, Deputy Shultz asked to come inside. Neather-land told him that he could not let him inside because it wasn’t his house and asked him to wait while he went to get Stephens. Neatherland explained that he could not close the door because it opened out and Deputy |sShultz was standing in the doorway. Instead of waiting, Deputy Shultz followed him into the house and awakened Stephens by getting close to him and hollering at him. Neatherland denied that he or Stephens told Deputy Shultz to enter the house. He also testified that he called Deputy Shultz the next day when Taylor returned to Stephens’ house but that Deputy Shultz did not rush back to apprehend her.
On cross, Neatherland admitted that he had prior distribution convictions and was on probation. Finally, he denied seeing any marijuana at Stephens’ house and denied that they were high.
Stephens testified that he was asleep on his couch when he was awakened by Deputy Shultz standing over him. He denied hearing any knocking on his door or any discussion between Deputy Shultz and Neatherland. He explained that his trailer door opens to the outside as stated by Neatherland and not inward as Deputy Shultz seemed to recall.
Stephens stated that when Deputy Schultz saw the marijuana roach he stated that he could get a warrant or that Stephens could consent to a search. Stephens then handed over the marijuana and led Deputy Schultz to a grinder in a dresser drawer. When asked whether he consented to the search of his home, Stephens replied:
Well he was talking about Adrianna and everything, he wanted to know about her and I consented to a search, you know, the dresser drawer where she kept her clothes and everything and he proceeded to search the rest of the house, yes sir.
Stephens denied consenting to a search of his entire home. He explained that he has abdominal cancer and had taken medications, including morphine, Elavil, and Ambien, that night. He also admitted to smoking the |4last of a joint. The combination of the marijuana and prescribed drugs had put him to sleep.
On cross, Stephens admitted to a prior distribution conviction. When asked *465 whether he was being untruthful when he told Deputy Shultz that he did not have more marijuana in the house, he stated that “it turned out not to be to my knowledge at that time that was all of it.” Finally, Stephens could think of no particular reason why Deputy Shultz would have it in for him or lie about what happened. He stated that he had never had a bad experience with him.
On redirect, Stephens admitted that he could remember everything that happened that night after he was awakened by Deputy Shultz, and he again denied inviting Deputy Shultz into his house.
The trial court identified the issue as whether Deputy Shultz had authority to enter Stephens’ home and noted it to be an issue of credibility. After stating that “the facts are in such dispute that it is appropriate to refer this to the trial on the merits,” the trial court denied the motion to suppress and noted the defendant’s objection for the record.
Stephens entered a Crosby plea of guilty to possession of marijuana, third offense, on September 27, 2010. In accordance with a sentencing agreement, the trial court sentenced him to five years at hard labor with credit for time served. Stephens then filed this appeal.
After the appeal was docketed and because it was not clear whether the trial court made a credibility determination in favor of the state in denying the motion to suppress, this court stayed the appeal and ordered the [ .¡trial court to submit written reasons explaining the grounds for its ruling. The trial court complied and filed reasons explaining that it found Deputy Shultz’s testimony about how he entered the home to be credible. Factors found by the trial court to be significant in assessing credibility included the purpose for which Deputy Shultz went to Stephens’ home and the potential exposure of both Stephens and Neatherland to further convictions based on the finding of drugs in the home. Their prior drug convictions provided good reason for them to deny that they let Deputy Shultz enter the home. The trial court reasoned that because Stephens and Neatherland knew that Deputy Shultz was there to find Taylor, they had no cause to be concerned about his presence. Thus, the trial court concluded that it was more credible than not that Deputy Shultz had permission to enter.
DISCUSSION
Stephens argues that Deputy Shultz had no reason to be in his home without a search warrant once he learned that Taylor was not there. He denies,, that he consented to entry and maintains that he could not have done so because he was sleeping. He asserts that Deputy Shultz’s testimony that he was lying down on the couch corroborates his claim that he was sleeping. Moreover, Stephens argues that Deputy Shultz’s testimony that he appeared to be high along with his admission that he had smoked some marijuana and taken morphine and other medications indicates that he was intoxicated and could not have consented to Deputy Shultz entering or searching his home.
|fiThe state counters that the trial court made a credibility determination in believing Deputy Shultz’s testimony and that its ruling was correct under the facts established at the hearing.
La. Const, art. 1, § 5 states:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or *466 things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
A defendant who is adversely affected may move to suppress evidence on the ground that it was unconstitutionally obtained. La. C. Cr. P. art. 703(A). While the burden is on the defendant to prove the ground of his motion, the state bears the burden of proving the admissibility of any evidence seized without a warrant. La. C. Cr. P. art. 703(D). The record is clear that Deputy Shultz did not have a warrant authorizing a search of Stephens’ home. A warrantless search and seizure is presumed unreasonable, unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330; State v. Talbert, 449 So.2d 446 (La.1984); State v. Ledford, 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168.
A valid consent search is an exception to the warrant requirement. State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082; State v. Owens, 480 So.2d 826 (La.App. 2d Cir.1985), writ denied, 486 So.2d 748 (La.1986), cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986). An oral consent to search is valid. State v. McGill, 31,202 (La.App.2d Cir.9/23/98), 720 So.2d 720, writ denied, 98-2721 (La.2/5/99), 737 So.2d 746; Crews, supra. However, the burden is on the state to prove that consent was given freely and voluntarily. Crews, supra; McGill, supra; Owens, supra.
Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case, and the trial court’s factual determinations are to be given great weight on appellate review. State v. Edwards, 434 So.2d 395 (La.1983); State v. Howard, 37,580 (La.App.2d Cir.9/24/03), 855 So.2d 881.
The issue is whether Deputy Shultz had consent to enter Stephens’ home. Deputy Shultz testified that he heard Neatherland ask Stephens if he could enter and Stephens say he could come inside. He stated that he would have stayed at the door and waited for Stephens if he had not been allowed entry. Deputy Shultz admitted he could not see Stephens from the doorway, but the record indicates that the living room was only a short distance from the doorway of the trailer. Moreover, the record indicates that Deputy Schultz and Stephens knew one another. Both Stephens and Neatherland disputed Deputy Shultz’s version by claiming that Stephens was asleep until awakened by Deputy Shultz, who followed Neatherland into the home. Faced with conflicting versions of what occurred, the trial court had to make a credibility determination. The trial court found Deputy Shultz’s testimony about how he entered the home to be credible and the testimony of the defense witnesses to lack credibility.
IsThere is no dispute that Stephens was on the couch when Deputy Shultz entered the home. In arguing that the totality of the circumstances does not support the trial court’s ruling, Stephens asserts that Deputy Shultz’s testimony corroborates his claim that he was asleep. Deputy Shultz testified that Stephens was “laid on the couch” with a plate of food and a marijuana roach beside him and that he looked high. Deputy Shultz did not testify that Stephens was asleep, and the presence of the food and marijuana beside Stephens suggests that he was awake and had been eating and smoking marijuana rather than sleeping.
*467 Stephens admitted that he had smoked marijuana and claimed that he had taken various medications, including morphine. He suggests that intoxication from the combination of drugs prevented him from consenting to Deputy Shultz either entering or searching his home. Intoxication is a factor that can be considered in determining whether consent was voluntary. State v. Owens, supra. However, Stephens’ claim of intoxication sufficient to invalidate consent is refuted by his seemingly clear recall of the events when testifying at the motion to suppress.
The facts show that Deputy Shultz was there to locate Taylor and not to conduct a search of Stephens’ home for drugs. It does not appear from the record that locating Taylor was of such urgency that Deputy Shultz would have barged into the house and awakened Stephens to question him about her whereabouts. Stephens and Neatherland admitted to having prior drug-related convictions. Their criminal histories and the possibility of further convictions stemming from the drugs seized by Deputy Shultz are | /actors that would cause them to deny that Stephens gave Deputy Shultz consent to enter the trailer.
The trial court was in the best position to weigh and assess the testimony and credibility of the witnesses. Considering that the trial court’s factual findings are to be given great weight on appeal, we cannot conclude on this record that its determination that Stephens freely and voluntarily consented to Deputy Shultz’s entry into his home was unreasonable or in error.
Once inside the home, Deputy Shultz saw the marijuana roach beside Stephens in plain view. The plain view doctrine is another exception to the warrant requirement. State v. Young, 39,546 (La.App.2d Cir.3/2/05), 895 So.2d 753. The plain view exception applies when the police officer is lawfully in the place from which he views the object, the incriminating character of the evidence is immediately apparent, and the officer has a lawful right of access to the object. Id.
As stated, Officer Shultz was lawfully in the trailer, having obtained Stephens’ verbal consent to enter. He observed the clip and the marijuana roach beside Stephens while talking to him. Stephens admitted that he had been smoking marijuana. He even testified that he told Deputy Shultz that it was the last of some marijuana that he saved from a Super Bowl party in Shreveport. It is undisputed that Stephens then consented to a search, but he testified that he only consented to a search of the area where Taylor’s belongings were kept. However, at that point it was clear that Deputy Shultz was seeking further evidence of drugs in the home and was not Imlooking for Taylor. Stephens’ claim that he consented only to a search of Taylor’s belongings is unbelievable under the circumstances shown by the testimony.
For these reasons, we find no merit to Stephens’ arguments. Deputy Shultz’s entry and seizure of marijuana found inside the home did not infringe upon Stephens’ constitutional right to be free from unreasonable searches and seizures.
CONCLUSION
Finding that the trial court did not err in denying the motion to suppress, we affirm the defendant’s conviction and sentence.
AFFIRMED.